AQUILINA VILLANUEVA CARBALLO, demandante y apelada, *v.* JUAN SUÁREZ PÉREZ Y SU ESPOSA MERCEDES ZENGOTITA, demandados y apelantes.

No. 4693.—*Sometido:* Junio 18, 1929. *Resuelto:* Mayo 23, 1930.

*Feliú & La Costa,* abogados de los apelantes; *M. A. Martínez Dávila,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La demanda en este caso tiene doble aspecto. Los apelantes insisten en que la médula de la acción ha de hallarse en ciertas alegaciones relativas a amenazas, dolo, coacción y fraude. La apelada alega que la acción es principalmente una en cobro de dinero recibido por la parte demandada sin título o derecho alguno, y pagado por la demandante equivocadamente. Desde uno u otro punto de vista, la demanda

aduce hechos suficientes para determinar una causa de acción. Para los fines de esta opinión, la segunda de estas teorías puede considerarse como un fundamento alternativo o como una segunda causa de acción en que la demandante ha intentado fundarse en caso de que deje de establecer la primera, de acuerdo con la regla familiar que exige prueba clara y convincente de fraude.

Los apelantes dicen que la corte de distrito erró: primero, al concluir que los supuestos amenazas, dolo, fraude y coacción quedaron probados; segundo, al concluir que el demandado Suárez Pérez cobró indebidamente a la demandante la suma de $1,875, y al condenar a dicho demandado al pago de esa cantidad, con intereses al tipo legal desde abril 18, 1925, y al conceder las costas a la demandante; y, tercero, al dictar sentencia a favor de la demandante.

La tercera de estas tres contenciones, según se desarrolla en el alegato de los apelantes, es un corolario de la primera. A menos que la segunda contención sea claramente correcta, la primera llega a ser académica.

Los artículos 1796 y 1797 del Código Civil leen como sigue:

"Artículo 1796. Cuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla.

"Artículo 1797. El que acepta un pago indebido, si hubiera procedido de mala fe, deberá abonar el interés legal cuando se trate de capitales, o los frutos percibidos o debidos percibir cuando la cosa recibida los produjera.

"Además responderá de los menoscabos que la cosa haya sufrido por cualquiera causa, y de los perjuicios que se irrogaren al que la entregó, hasta que la cobre. No se prestará el caso fortuito cuando hubiese podido afectar del mismo modo a las cosas hallándose en poder del que las entregó."

Con el fin de garantizar una sentencia pendiente de ejecución, un administrador judicial hipotecó tres fincas, "A," "B" y "C." En una partición posterior de la herencia, la finca "C" fué adjudicada a Gumersindo Falú, como albacea,

con el fin de satisfacer esa hipoteca. Al mismo tiempo, se adjudicó a la aquí demandante Aquilina Villanueva Carballo, un condominio pro indiviso de las tres cuartas partes de la finca "B." Falú entonces vendió la finca "C," juntamente con otra, a Juan Suárez Pérez, aquí demandado. Algunos meses después, Suárez Pérez instó acción contra Aquilina Villanueva en cobro del importe de un pagaré que le había sido endosado por la persona a cuyo favor se otorgó, así como en cobro de varias otras sumas de dinero que alegaba haberle prestado a la dicha Aquilina Villanueva. Ella entonces traspasó a Suárez Pérez su condominio pro indiviso de las tres cuartas partes en la finca "B."

La escritura especifica un precio de $4,500. Hace referencia a un gravamen hipotecario en descubierto sobre la finca por la suma de $2,500 más intereses al 12 por ciento, y asevera que la vendedora se obligaba a pagar tres cuartas partes de esa suma además de una proporción similar en concepto de intereses y contribuciones, o, en otras palabras, la suma de $1,875 de capital e intereses vencidos, en adición de su parte de las contribuciones por pagar. De los $4,500, la vendedora, una viuda analfabeta, sólo recibió $1,500 en efectivo en el momento de efectuarse la enajenación. Suárez Pérez se hizo cargo del pago de la hipoteca que pesaba sobre las tres cuartas partes de la finca objeto de la venta, así como de sus intereses y las contribuciones, y renunció a cualquier reclamación contra la vendedora por concepto de ese gravamen.

De conformidad con los términos de la aludida hipoteca por $6,000, se hizo a la finca marcada con la letra "A" responsable de la suma de $1,500, a la marcada con la letra "B" de $2,500, y a la marcada con la letra "C" de $2,000. Esta hipoteca, la adjudicación de la finca "C" a Gumersindo Falú a fin de que pagara ese gravamen, y la enajenación de la finca "C" hecha por Falú a favor de Suárez Pérez, fueron inscritas en el registro de la propiedad unos ocho meses antes

de que Suárez Pérez adquiriera la participación de la viuda en la finca "B".

Gumersindo Falú, pocos días o pocas semanas después de haber adquirido la finca "C" a un precio de $6,000, a condición de que satisficiera una obligación en descubierto asumida por él, vendió esa finca a Suárez Pérez por la cantidad de $3,400. Al mismo tiempo, Falú vendió a Suárez Pérez otra finca que no está identificada por la prueba que tenemos ante nos. Ni el precio total de la compra ni el de la finca no identificada han sido revelados por los autos en el presente caso. De dicho total, cualquiera que fuese, Suárez retuvo $3,500 para satisfacer gravámenes hipotecarios que pesaban sobre las dos fincas. El asiento en el registro demuestra que, a tenor de una cláusula contenida en la escritura, la hipoteca sobre la finca "C" era por $2,000, e identifica la misma como la responsabilidad proporcional de esta finca bajo la hipoteca de $6,000 primeramente mencionada. La diferencia sin explicar que existe entre la tasación de la finca al tiempo de ser adquirida por Falú y el precio especificado en la escritura de enajenación a favor de Suárez Pérez excede sólo por $100 el principal del gravamen hipotecario que pesaba sobre la finca "B" como responsabilidad proporcional de esta finca en la obligación total de $6,000 asumida por Falú. Además, según indica la apelada, esta diferencia sin explicar, al ser agregada a los $3,500 que Suárez retuvo del precio total de la compra, hace una monta de $6,100, o sea, $100 más que el importe de la obligación asumida por Pérez a cambio de la adjudicación que se le hizo de la finca "C". Incidentalmente, la diferencia entre los $3,500 retenidos por Suárez Pérez y los $2,000 de la hipoteca original resulta ser la cantidad exacta de la responsabilidad proporcional de la finca "A" en la deuda total de $6,000, que era el capital de la hipoteca original de que se hizo cargo Suárez Pérez al adquirir la finca "C".

Cuando la viuda vendió su condominio pro indiviso en la finca "B" a Suárez Pérez, éste insistió en que se insertara

una cláusula redactada por él de su puño y letra y entregada por él al notario.   Dice así:

"(f)—Sigue manifestando doña Aquilina Villanueva, que si con motivo de la partición de bienes relictos al fallecimiento de Manuel Falú Benítez, resultare cualquier otra propiedad gravada para el pago de la hipoteca a que se ha hecho mención en esta escritura, renuncia por la presente a favor de su comprador señor Juan Suárez Pérez, de cualquier derecho que pudiera tener sobre la misma."

De suerte que aparece en forma bastante clara que Suárez Pérez tenía conocimiento real, así como implícito, del hecho de que el título de Falú sobre la finca "C" dependía del cumplimiento de la obligación contraída por él al tiempo de adquirirla.

El tenedor de la hipoteca por $6,000 no fué parte en la escritura de partición, y, desde luego, no estaba obligado por los términos y condiciones de ese instrumento.   En lo que a él se refería, las fincas "A" y "B" continuaron sujetas al gravamen hipotecario en caso de que él optara por ejecutarlo al dejar Falú de satisfacer la hipoteca.   En lo concerniente a Falú y las otras partes de la escritura de partición, éstas quedaron relevadas de toda responsabilidad personal; las fincas "A" y "B" quedaron liberadas de todo gravamen y el título de Falú sobre la finca "C" quedó sujeto a la condición de que pagara la hipoteca de $6,000.   El no podía exonerar esa finca de la carga así impuéstale, a no ser efectuando tal pago.   Suárez Pérez recibió su título de la finca "C" de Falú sujeto a la misma condición en que Falú lo había adquirido.   Si, después de la compra hecha por Suárez Pérez, debía ser éste el que cumpliera esa condición o Falú, es cuestión que carece de importancia.   Si Suárez Pérez no tenía conocimiento de esa condición al tiempo de adquirir de Falú, lo obtuvo plenamente cuando con posterioridad adquirió el condominio de la viuda sobre la finca "B".

La escritura otorgada por la viuda a Suárez Pérez demuestra que ella misma creía que era personalmente responsable de $1,875, que no adeudaba.   No es probable que ella

hubiese permitido a Suárez Pérez retener $1,875 del precio de la compra a fin de pagar una deuda previamente asumida por Falú si ella hubiese sabido que Falú o Suárez Pérez estaban en primer término obligados a satisfacer esa deuda.

Es muy de concebirse que Suárez Pérez, al tiempo de efectuar la compra de Falú, no asumiera responsabilidad personal alguna por los $4,000 originalmente garantizados por las hipotecas otorgadas sobre las fincas "A" y "B". Si Suárez Pérez hubiera retenido los $1,875 como un depósito para resguardarse de cualquier posible pérdida por dejar Falú de satisfacer alguna parte de la obligación hipotecaria original—por la cual él seguía siendo responsable—, habríase presentado un caso algo distinto. El no tenía derecho a retener el dinero bajo el entendido con la vendedora de que lo hacía con el objeto de pagar una obligación personal de ella, cuando él sabía que no existía tal obligación. El actuó de mala fe dentro del significado del artículo 1797, *supra,* ya fuera o no culpable de cualquier simulación fraudulenta.

El juez de distrito no cometió error al llegar a la conclusión de que el demandado Suárez Pérez le había cobrado a la demandante indebidamente la suma de $1,875, ni al condenar a la parte demandada al pago de dicha suma más intereses al tipo legal. No hubo abuso de discreción al conceder las costas a la demandante.

No es necesario discutir la prueba relativa a simulación, coacción y dolo.

*Debe confirmarse la sentencia recurrida.*